**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ANGIE VASSEL, | CASE NO. 1:13-CV-01493 |
| Plaintiff, | JUDGE PEARSON |
| v. | MAGISTRATE JUDGE VECCHIARELLI |
| CAROLYN W. COLVIN,<br>Acting Commissioner<br>of Social Security, | |
| Defendant. | **REPORT AND RECOMMENDATION** |

Plaintiff, Angie Vassel ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

**I.     PROCEDURAL HISTORY**

On December 6, 2010, Plaintiff filed her applications for SSI, POD, and DIB, alleging a disability onset date of December 2, 2010. (Transcript ("Tr.") 14.) The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.*) On April 12, 2012, an ALJ

held a video hearing. (*Id.*) Plaintiff participated in the hearing, was represented by counsel, and testified. (*Id.*) A vocational expert ("VE") also participated and testified. (*Id.*) On May 9, 2012, the ALJ found Plaintiff not disabled. (Tr. 11.) On May 7, 2013, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On July 10, 2013, Plaintiff filed her complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 21, 23.)

Plaintiff asserts the following assignment of error: The ALJ did not properly consider the opinions that treating physician Dr. William Petersilge rendered in a March 28, 2011, letter addressed to a Social Security Disability case manager.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born in May 1963 and was 47-years-old on the alleged disability onset date. (Tr. 22.) She had at least a high school education and was able to communicate in English. (*Id.*) She had past relevant work as an injection molding machine tender. (Tr. 21.)

### B. Medical Evidence

#### 1. Medical Reports

On July 14, 1982, Plaintiff sustained injuries after being struck by a motor-vehicle while riding her bike. (Tr. 377.) She underwent a right hip replacement in 1990. (Tr. 320.) In June 2010, twenty years after her hip replacement, she initiated treatment

with Brett Toward, M.D. (*Id.*) Plaintiff complained of hip and leg pain beginning six weeks earlier. (*Id.*) She explained that she had not had any pain for the last ten years and that she had used conservative treatment such as over-the-counter medication and heat, both of which had offered her some pain relief. (*Id.*) On examination, Plaintiff had decreased active range of motion, but full passive range of motion and no tenderness. (Tr. 321.) Dr. Toward recommended radiographic tests, which were unremarkable. (Tr. 296.)

Plaintiff returned to Dr. Toward on September 2, 2010, for a follow-up of her leg pain. (Tr. 315.) Plaintiff related that Demerol "worked great," but that she had been experiencing recurring symptoms over the last week. (*Id.*) She admitted that she had attended only three physical therapy sessions before stopping treatment. (*Id.*) Plaintiff's examination was normal, and Dr. Toward explained that her pain was not consistent with anatomical distribution. (Tr. 319.) Dr. Toward noted that "for some reason [Plaintiff] asks a lot of questions about workers comp[ensation]." (Tr. 315.) She "ask[ed] 'can you just say this is work related? 'I really need you to say this is work related for me' [and] 'do I need to get me a lawyer to have this changed to [a] work injury.'" (*Id.*) Dr. Toward further noted that Plaintiff's "comments about [workers' compensation] make me suspicious that she is seeking secondary gain." (Tr. 319.) He referred Plaintiff to an orthopedist for further evaluation. (*Id.*)

Plaintiff presented to orthopedist William Petersilge, M.D., on December 2, 2010. (Tr. 326.) Plaintiff explained that she "did very well" for the past ten years, but that she "feels that work has done her wrong, that her work environment is the cause of her

3

problems, and that they should pay." (*Id.*) Dr. Petersilge did not attribute Plaintiff's symptoms to her work, believing instead that her symptoms "appear[] to be a mechanical failure of the [hip] device related to repetitive use and wear in 20 years of activity." (*Id.*) Plaintiff refused to allowed Dr. Petersilge to examine her hip. (*Id.*) Dr. Petersilge noted that Plaintiff walked with a slight antalgic gait and no assistive device. (*Id.*) Based on diagnostic testing, Dr. Petersilge recommended revision of Plaintiff's hip replacement. (*Id.*)

Plaintiff underwent a right hip revision in December 2010. (Tr. 337.) At her one-month follow-up appointment on January 21, 2011, Dr. Petersilge noted that "[o]bjectively, as far as I can tell, [Plaintiff] is doing fine." (*Id.*) He also noted that it was "very hard to get an honest opinion of how she is moving." (*Id.*) Plaintiff could "move well" to the examination table and could bear weight on her hip. (*Id.*)

At Plaintiff's February 24, 2011, appointment with Dr. Petersilge, Plaintiff related concerns about increased wear of her new prosthesis with activity. (Tr. 338.) Dr. Petersilge permanently restricted Plaintiff to lifting no more than 25 pounds. (*Id.*) Her other post-surgical restrictions included limitations to lifting up to 20 pounds frequently and 20 pounds occasionally. (Tr. 344.) Dr. Petersilge opined that Plaintiff was moderately limited in her ability to push and pull and extremely limited in her ability to bend. (*Id.*)

On March 28, 2011, Dr. Petersilge noted that Plaintiff's walking had improved, but that she still had an antalgic gait. (Tr. 339.) He indicated that he supported Plaintiff's "claim for Medicaid coverage for her ongoing hip and knee disability." (*Id.*)

An examination of Plaintiff's knee revealed some mild effusion and slight crepitus with patellofemoral range of motion.  (*Id.*)  In a letter dated March 28, 2011, to Nikki Hostutler, an SSI Case Manager at Richland Job and Family Services, Dr. Petersilge indicated that he believed it was not reasonable to expect Plaintiff to return to her last position in the industrial field given her right leg weakness, limp, and ongoing pain.  (Tr. 340.)  Dr. Petersilge noted that Plaintiff "needs to continue to shift between a seated and standing position which is not accommodated well by most jobs."  (*Id.*)  He also noted, "I do not think with her current job skill set that she is able to find employment" (*Id.*)  Dr. Petersilge did not provide many specific functional abilities, but he did indicate that Plaintiff is able to ambulate approximately 100 yards with a cane and needs to take intermittent breaks.  (*Id.*)

Plaintiff returned to Dr. Petersilge on May 23, 2011.  (Tr. 353.)  Plaintiff complained of significant pain in her right leg as well as thigh, groin, and knee pain.  (*Id.*)  Dr. Petersilge confirmed that there was no evidence of significant degeneration in Plaintiff's knee.  (*Id.*)  He noted that he "filled out her disability forms" to indicate that based on her reports of pain, prior operations, endurance, and use of a cane, he believed it was unlikely that Plaintiff would "find gainful employment" and thus "I am supporting her claim for disability."  (*Id.*)

Subsequent progress notes from Dr. Petersilge indicate that Plaintiff looked for employment but was unable to find a job.  (Tr. 355.)  Dr. Petersilge noted in October 2011 that "[p]ain wise, I think she is getting better from the last few months, but her pain is not totally resolved."  (*Id.*)  Updated diagnostic tests showed stable total right hip

5

arthroplasty with minimal degenerative changes. (Tr. 358.)

Dr. Petersilge prescribed physical therapy for Plaintiff, but she attended only five sessions. (Tr. 370, 374.) She instructed her physical therapists "to not touch her or catch her if she falls." (Tr. 371.) Plaintiff's physical therapists could not test her range of motion because she would not allow anyone to touch her. (Tr. 374.) Plaintiff "would not attempt even the most gentle [range of motion] ex[ercises]" and "refused gait training." (*Id.*)

Plaintiff began pain management in early 2012. On examination, she walked with a non-antalgic gait, had 4 out of 5 muscle strength in her right leg, 5 out of 5 strength in her left leg, no muscle atrophy, and good range of motion. (Tr. 379, 389.)

**2.  Agency Reports**

In connection with her application for benefits, Plaintiff attended a consultative examination with James Sunbury, Ph.D., on May 21, 2011. (Tr. 348.) During the evaluation, Plaintiff "threw an envelope of papers" related to her motor vehicle accident on Dr. Sunbury's desk. (Tr. 349.) When Dr. Sunbury asked Plaintiff how her December 2010 surgery went, she responded, "How should I know? I'm not a doctor." (*Id.*) When asked about her arrest record, Plaintiff did not provide information and instead stated "we'll leave that subject alone." (*Id.*) Dr. Sunbury noted that Plaintiff was "marginally cooperative" and difficult to interview. (Tr. 350.) She responded to all questions with an "angry, almost yelling voice and sarcasm." (*Id.*) When her phone rang during the examination, however, Plaintiff "answered in a pleasant voice and ha[d] a friendly one-minute conversation" and planned a social event. (*Id.*) Her activities included doing

6

household chores and attending church. (Tr. 351.) Dr. Sunbury concluded that Plaintiff did not suffer from clinical depression, and he assessed a Global Assessment of Functioning (GAF) score of 70.[1] (*Id.*)

**C.     Hearing Testimony**

    **1.     Plaintiff's Hearing Testimony**

Plaintiff was involved in an accident in 1982 and has had a total of six surgeries on her right hip since then. (Tr. 43.) She had a total hip replacement in 1990. (Tr. 45.) She worked several different jobs after her surgery and testified that she last worked as an inspector of metal parts in September 2010 and was "wrongfully terminated" from that job. (Tr. 35.) Plaintiff had a year of college and wanted to become an engineer. (Tr. 57.) She testified that she had good math skills. (*Id.*)

Plaintiff testified that she is in constant pain and that medicine had been helpful but made her drowsy. (Tr. 48.) She testified that her pain is non-stop and is exacerbated by bending, moving, and walking. (Tr. 49.) She believed she could walk about ten minutes with her cane before she would need to sit down and stretch. (*Id.*) She could sit continuously for 40 minutes without pain. (Tr. 50.) She could stand for 40-45 minutes before having to change position. (Tr. 51.) She testified that she used a cane pursuant to her doctor's orders. (Tr. 66.)

Plaintiff lived by herself in a multi-story house. (Tr. 34-35.) On a typical day, she woke up around 6:00 am, got dressed, made herself breakfast, took care of her dog,

---

[1]     The GAF scale incorporates an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health illness devised by the American Psychiatric Association. A GAF score between 61 and 70 indicates mild symptoms.

did the dishes, cleaned her house, did laundry, read, and napped. (Tr. 51-54.) Every once and awhile she had visitors. (Tr. 54.) She went to church when she felt well enough. (Tr. 55.) At the time of her hearing, Plaintiff had not driven for several months, although her doctor said would be fine to drive. (*Id.*) She did her own grocery shopping. (Tr. 56.)

    **2.    Vocational Expert's Hearing Testimony**

Ms. Suman Srinivasan, a vocational expert, testified at Plaintiff's hearing. The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and work experience who is able to perform the exertional demands of light work. (Tr. 70-71.) The individual could occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; frequently balance; and occasionally stoop, kneel, crouch, or crawl. (Tr. 71.) The individual would be capable of working in a low stress job defined as having only occasional changes in the work setting and no production rate or pace work. (*Id.*) The VE testified that the hypothetical individual could perform Plaintiff's past work as an injection molding machine tender. (*Id.*) The VE further testified that the individual could perform other jobs in the regional or national economy, such as a fingerprint clerk, an office helper, and a storage facility rental clerk. (Tr. 72.)

The ALJ asked the VE to assume a second hypothetical individual who had the same limitations as described above but added that the person is capable of work that allows them to alternate sitting and standing positions at will throughout the work day provided they remain productive. (Tr. 72-73.) The VE testified that the individual could perform the jobs she previously identified (Tr. 73.)

The VE further testified that if the individual would be limited to jobs that can be performed while using a hand held assistive device which would be required at all times while standing and the contra lateral upper extremity could be used to lift and carry up to the exertional limits, the individual would not be capable of performing the jobs previously described. (Tr. 73-74.) The VE testified that the jobs she previously named would be available if the hand held device was required only at times when the person would be walking. (Tr. 74.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 *and* 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant

9

must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2015.

2. The claimant has not engaged in substantial gainful activity since December 2, 2010, the alleged onset date.

3. The claimant has the following severe impairment: Right leg and hip pain post right hip replacement.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently

>
> balance and she can never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs. Further, the claimant requires an option to alternate between sitting and standing at will provided that she remains on-task and productive. Finally, the claimant can only work in a low stress job with only occasional changes in the work setting and that requires no production pace or rate work.
>
> 6. The claimant is capable of performing past relevant work as an injection molding machine tender. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 7. In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform.
>
> 8. The claimant has not been under a disability, as defined in the Social Security Act, from December 2, 2010, through the date of this decision.

(Tr. 16-23.)

## LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the

evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignment of Error

Plaintiff argues that the ALJ did not properly consider the opinions in Dr. William Petersilge's March 28, 2011, letter to Nikki Hostutler, an SSI case manager. (Tr. 340.) In the letter, Dr. Petersilge expressed his opinion that Plaintiff is unable to work. (*Id.*) Specifically, Dr. Petersilge noted that Plaintiff "requires a supportive device such as a cane to ambulate," and she "needs to continue to shift between a seated and standing position which is not accommodated well by most jobs." (*Id.*) He opined that Plaintiff is able to ambulate approximately 100 yards with a cane and needs to take intermittent breaks. (*Id.*) Dr. Petersilge concluded that, since Plaintiff's only training is in an industrial job, he did "not feel that [it] is reasonable to expect her to return to an industrial application given her right leg weakness, limp and ongoing pain." (*Id.*) For the following reasons, Plaintiff's argument that the ALJ erred in evaluating Dr.

Petersilge's opinion is without merit.

"An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted). If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight. *See Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)). This "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is to "let claimants understand the disposition of their cases" and to allow for "meaningful review" of the ALJ's decision, *Wilson,* 378 F.3d at 544 (internal quotation marks omitted). Where an ALJ fails to explain his reasons for assigning a treating physician's opinion less than controlling weight, the error is not harmless and the appropriate remedy is remand. *Id*.

Here, the ALJ assigned little weight to the opinions Dr. Petersilge rendered immediately prior to Plaintiff's revision surgery in December 2010 as well as his opinions from March 2011. (Tr. 20.) The ALJ explained:

> Both of these opinions are statements that are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. Such administrative findings are reserved to the Commissioner, who cannot abdicate his statutory responsibility to determine the ultimate issue of disability. Such opinions can never be entitled to controlling weight, but must be carefully considered to determine the extent

13

> to which they are supported by the record as a whole or contradicted by persuasive evidence. . . . I have considered these statements of Dr. Petersilge and have determined that they are inconsistent with the objective evidence of record, including the more recent pain management check-up and with the claimant's refusal to cooperate in physical therapy.

(Tr. 20.)

The ALJ's rationale for assigning less than controlling weight to Dr. Petersilge's opinions satisfies the good reasons requirement of the treating physician rule. First, the ALJ was correct in noting that Dr. Petersilge's opinion that Plaintiff cannot work due to her physical condition is not an opinion of a medical condition, but rather is an opinion of disability that is reserved for the ALJ. It is well established that certain issues are reserved to the Commissioner for determination. *See* 20 C.F.R. § 416.927(d). Among these are whether a claimant is disabled. *See* 20 C.F.R. § 416.927(d)(1) ("We are responsible for making the determination or decision whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). To give controlling weight to a physician's statements that a claimant is disabled or unable to work "would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96-5P (S.S.A July 2, 1996). Accordingly, the ALJ did not err in giving less than controlling weight to Dr. Petersilge's opinion that Plaintiff is unable to work, as the ALJ was not required to defer to Dr. Petersilge's opinion on that subject.

Furthermore, the ALJ did not err in assigning little weight to Dr. Petersilge's

14

opinion regarding Plaintiff's functional limitations, because the ALJ reasonably concluded that the opinion was not consistent with other substantial evidence in the record. (Tr. 20.) The ALJ discussed the following evidence supporting his conclusion that Dr. Petersilge's opinion was not supported by the record:

- At an appointment with Dr. Petersilge in January 2011, Dr. Petersilge reported that Plaintiff appeared to be doing fine following her recent surgery and that she could get onto the examining table and bear weight on her hip. (Tr. 19.) While Plaintiff complained of some groin discomfort, an x-ray of her hip determined that the right hip arthroplasty was satisfactory. (*Id.*)

- At a March 2011 appointment with Dr. Petersilge, Plaintiff was ambulating with the use of a cane and could walk approximately 300 feet before needing rest. (*Id.*) The ALJ noted that although Plaintiff continued to complain of hip and knee pain, radiographic evidence was all normal. (*Id.*)

- Although treatment notes indicate that Plaintiff continued to ambulate with a cane in March 2012, there is no indication that the cane was medically necessary. (*Id.*) The ALJ concluded that Plaintiff's "alleged dependence on the cane could be due in large part to [her] unwillingness to cooperate with treatment." (*Id.*) The ALJ further concluded that Plaintiff's recent check-ups "display that the claimant has only slightly reduced strength in her right leg and no muscle atrophy. These objective findings paired with the claimant's unwillingness to participate in strengthening exercises indicate that the claimant's cane is not necessary." (Tr. 20.)

- The ALJ determined that Plaintiff's credibility had been weakened by her attempts to urge her providers to conclude that her injury was work related, her uncooperative nature with her treating and assessing provides, and her daily activities, which include her ability to go up and down stairs regularly. (Tr. 18-20.) Despite her alleged disabling impairment, Plaintiff has continued to live alone in a multi-story house. (Tr. 18.) Furthermore, the ALJ found that the evidence suggests that she is able to complete all of her household chores unassisted. (*Id.*) The ALJ concluded that "[s]uch a high level of functional ability is inconsistent with the claimant's allegation of disability." (*Id.*)

Thus, the ALJ adequately explained how substantial evidence in Plaintiff's record did

15

not support Dr. Petersilge's opinion regarding Plaintiff's limitations.

Dr. Petersilge's opinion that Plaintiff is unable to work is not binding on the ALJ, as it is not an opinion of a medical condition, but rather is an opinion of disability that is reserved for the ALJ. Furthermore, to the extent Dr. Petersilge offered opinions regarding specific functional limitations in the March 2011 letter to which Plaintiff has taken issue, the ALJ has articulated good reasons for assigning less than controlling weight to those opinions. As to the specific functional limitations Dr. Petersilge offered that the ALJ found to be consistent with the record as a whole, the ALJ accommodated those limitations in his RFC determination. For example, Dr. Petersilge opined that Plaintiff could lift 20 pounds frequently and 25 pounds occasionally, and the ALJ accounted for this by limiting Plaintiff to a range of light work.[2] (Tr. 20, 338, 344.) The ALJ's RFC determination also included a sit/stand option, as suggested by Dr. Petersilge. (Tr. 17, 340.) Accordingly, the ALJ did not error in evaluating the opinions of Dr. Petersilge, and Plaintiff's assignment of error presents no basis for remand.

## VI. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

s/ <i>Nancy A. Vecchiarelli</i><br>U.S. Magistrate Judge

Date: April 11, 2014

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 416.967(b).

16

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).